UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LORI DUKE,

        Plaintiff,                              Case No.  1:15-CV-0831

v.                                                  HON. GORDON J. QUIST

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

**OPINION**

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner).  Plaintiff Lori Duke seeks review of the Commissioner's decision denying her claim for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act.

**STANDARD OF REVIEW**

The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision.  *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).  The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility.  *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence.  *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was fifty-two years of age on the date of the Administrative Law Judge's (ALJ) decision. (PageID.29, 52.) She completed high school, obtained a two year certificate in corrections, and was previously employed as a gate guard. (PageID.52, 75.) Plaintiff applied for benefits on September 20, 2013, alleging that she had been disabled since October 30, 2012, due to depression, severe migraines with vomiting, anxiety, and an inability to get out of bed, apparently due to her mental impairments. (PageID.109, 123, 155–162.) Plaintiff's applications were denied on April 1, 2014, after which time she requested a hearing before an ALJ. (PageID.138–145, 149–150.) On February 13, 2015, Plaintiff appeared with her counsel before ALJ Thomas L. Walters for an administrative hearing with testimony offered by Plaintiff and a vocational expert (VE). (PageID.48–79.) In a written decision dated March 20, 2015, the ALJ determined that

Plaintiff was not disabled. (PageID.29–47.) On June 24, 2015, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.22–27.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff has the burden of proving the existence and severity of limitations caused by her impairments and that she is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. § 404.1520(f)).

ALJ Walters determined Plaintiff's claim failed at the fifth step of the evaluation. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date. (PageID.34.) At step two, the ALJ determined that Plaintiff had the following severe impairments: (1) migraine headaches; (2) depression; and (3) anxiety. (PageID.34–35.) At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (PageID.35–36.) At the fourth step, the ALJ found that Plaintiff retained the RFC based on all the impairments:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she is limited to simple, routine, and repetitive tasks. These tasks must be free of fast-paced production requirements and must involve only simple work related decisions and routine workplace changes where she is on task at least 85% of the time. She can have occasional contact with the public. She is limited to frequently fingering and handling.

(PageID.36.) Continuing with the fourth step, the ALJ determined that Plaintiff was unable to perform her past relevant work. (PageID.43.) At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy that Plaintiff could perform given her limitations. *See Richardson*, 735 F.2d at 964. The VE identified the following jobs as representative of work that Plaintiff could perform: light cleaner (900,000 national jobs), production helper (400,000 national jobs), and stock clerk (1,000,000 national jobs). (PageID.76–77.) Based on this record, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy. (PageID.44.)

Accordingly, the ALJ concluded that Plaintiff was not disabled at any point from her alleged onset date through the date of the decision. (PageID.44.)

**DISCUSSION**

**1.      Plaintiff Has Not Satisfied Her Step Three Burden.**

Plaintiff argues the ALJ erred at step three by failing to find that her depression and anxiety met or equaled the requirements of Listings 12.04 and 12.06. Specifically, she contends that the diagnoses and GAF score of 50 contained in a March 18, 2014 treatment note from Dr. Sven Zethelius, M.D., her treating physician, constitutes evidence that her impairments are of listing level severity, contrary to the ALJ's assertion that no source had provided such evidence. (PageID.525–526.) The Court disagrees.

The "Listing of Impairments" is set forth at 20 C.F.R. § 404, Subpt. P, Appendix 1. It "describes, for each of the major body systems, impairments which are considered severe enough to prevent a person from doing any gainful activity." 20 C.F.R. §§ 404.1525, 416.925. The medical criteria for a listing, i.e., the inability to perform "gainful activity," presents a higher level of severity from the statutory standard, i.e., the inability to perform "substantial gainful activity." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). "The reason for this difference between the listings' level of severity and the statutory standard is that, for adults, the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary." *Id.* At issue in this case are Listings 12.04 (affective disorders), and 12.06 (anxiety related disorders).

A claimant bears the burden of demonstrating that she meets or equals a listed impairment at the third step of the sequential evaluation. *Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987). In order to be considered disabled under the Listing of Impairments, "a claimant must establish that [her] condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that [her] condition meets or equals one of the listed impairments." *Id.* An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment. 20

5

C.F.R. §§ 404.1525(d), 416.925(d). A claimant does not satisfy a particular listing unless all of the requirements of the listing are present. *Hale v. Sec'y of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1987); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir.1984); *see, e.g., Thacker v. Soc. Sec. Admin.*, 93 F. App'x. 725, 728 (6th Cir. 2004) ("[w]hen a claimant alleges that [s]he meets or equals a listed impairment, [s]he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency"). If a claimant successfully carries this burden, the Commissioner will find the claimant disabled without considering the claimant's age, education and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d).

Listings for mental impairments generally begin with "paragraph A" criteria which is "a set of medical findings." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00. Paragraph A is followed by paragraph B, which contains a "set of impairment-related functional limitations." *Id.* Listings 12.04 and 12.06 also contain paragraph C criteria, which are additional functional criteria. *Id.* "The requirements in paragraphs B and C describe impairment-related functional limitations that are incompatible with the ability to do any gainful activity." *Id.* Listing 12.04 is met "when the requirements in both [paragraphs] A and B are satisfied, or when the requirements in C are satisfied." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04. Listing 12.06 is met "when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06. Plaintiff contests the ALJ's paragraph B finding, claiming that it is unsupported by substantial evidence because the ALJ did accord proper weight to Dr. Zethelius' opinion. (PageID.526.)

The paragraph B severity requirements of Listings 12.04 and 12.06 require at least two of the following: (1) a marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence,

6

or pace; or (4) repeated episodes of decompensation, each of extended duration. A "marked" limitation is a degree of limitation that is more than moderate, but less than extreme. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C); *see also Sullenger v. Comm'r of Soc. Sec.*, 255 F. App'x. 988, 993 (6th Cir. 2007). The ALJ found that Plaintiff did not meet the requirements of paragraph B because she had only mild restrictions in activities of daily living, moderate difficulties in social functioning, moderate difficulties with regard to concentration, persistence or pace, and had experienced no episodes of decompensation, which had been of extended duration. (PageID.35–46.)

The treatment note cited by Plaintiff contains no paragraph B findings. Instead, Dr. Zethelius' note lays out Plaintiff's medical history and subjective statements, diagnoses Plaintiff with major depressive disorder, posttraumatic stress disorder, and learning disorder, and assigns Plaintiff with a GAF score of 50.[2] (PageID.348–350.) This is fatal to Plaintiff's claim that Dr. Zethelius provided an opinion documenting impairments of listing level severity. (PageID.525–26.)

As for Dr. Zethelius's diagnoses, the fact that a physician has diagnosed a claimant with a condition says nothing about the severity of the condition. *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988); *see McKenzie v. Comm'r of Soc. Sec.*, No. 99-3400, 2000 WL 687680 at *5 (6th Cir. May 19, 2000) ("the mere diagnosis of an impairment does not render an individual disabled nor does it reveal anything about the limitations, if any, it imposes upon an individual"). Moreover, GAF scores do not constitute medical opinions. While the Court must generally defer to the medical opinions expressed by a claimant's care providers, *see King*, 742 F.2d at 973, the ALJ is not required "to put stock in a GAF score in the first place." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496,

---

[2] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed. 2000) (hereinafter DSM–IV). A GAF score of 50 indicates that the individual is experiencing "serious symptoms or any serious impairment in social, occupational, or school functioning." DSM–IV at 34.

511 (6th Cir. 2006) (citing *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002)). Indeed, a GAF score "may have little or no bearing on the subject's social and occupational functioning." *Id.* At bottom, "'[t]he GAF scale . . . does not have a direct correlation to the severity requirements in our mental disorders listings.'" *Oliver v. Comm'r of Soc. Sec.*, 415 F. App'x 681, 684 (6th Cir. 2011) (quoting Response to Comment, Final Rules on Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 FR 50746, 50764–65 (Aug. 21, 2000)). Accordingly, Dr. Zethelius's diagnoses and assigned GAF score do not satisfy Plaintiff's step three burden.

But even if the Court were to assume that Dr. Zethelius's treatment note constituted evidence that Plaintiff met the severity requirements of paragraph B, Plaintiff failed to argue in her pre-hearing brief, at the hearing, before the Appeals Council, or in her appeal before this Court that she also meets the paragraph A requirements of listing 12.04 and 12.06 or the alternative paragraph C requirements. As noted above, it is Plaintiff's burden to show that she meets all the requirements of a listing. This she has not done, and accordingly Plaintiff cannot show error with regard to the ALJ's step three determination.

### 2. The ALJ's RFC Determination is Supported by Substantial Evidence.

In her second claim of error, Plaintiff again argues the ALJ failed to properly consider her GAF scores, this time when assessing her RFC. (PageID.529.) Her argument fares no better here.

RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of her medically determinable impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a). It is further defined as "the maximum degree to which the individual retains the capacity for sustained performance of the

8

physical-mental requirements of jobs" on a regular and continuing basis. 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c); *see Cohen*, 964 F.2d at 530.

A GAF score "may help an ALJ assess mental RFC, but it is not raw medical data." *Kornecky*, 167 F. App'x at 503 n.7. It is nothing more than "subjective opinions, representing a snapshot of a person's level of functioning at a given moment in time, not a rating of their ability to work." *Lester v. Comm'r of Soc. Sec.*, No. 1:14-CV-270, 2015 WL 869257, at *5 n.2 (W.D. Mich. Feb. 27, 2015). The ALJ recognized this, concluding that Plaintiff's GAF scores "were highly subjective and a non-standardized measure of symptoms severity that merely captured the claimant's level of functioning or symptoms only at the time of the evaluation." (PageID.42–43.) This evaluation is supported by the record and the aforementioned authority.

Plaintiff also relies on records from Oaklawn Medical Group in which tests found she had depression ranging from moderately severe to severe. (PageID.497. 484, 481.) But Plaintiff's burden on appeal is much higher than identifying pieces of evidence on which the ALJ could have made a factual finding in her favor. The Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ. *Jones*, 336 F.3d at 477. The Court finds substantial evidence supporting the ALJ's decision here. The record shows that Plaintiff was hospitalized for a week in February 2014 for suicidal thoughts. (PageID.264–265.) During this time, Plaintiff's medications were adjusted and she attended therapy sessions. (PageID.268.) On discharge, Plaintiff was noted to be significantly improved. (PageID.269.) In March, she told Dr. Zethelius that she responded well to her medications. The doctor found her to be logical, rational, and coherent. (PageID.349.) In May, Plaintiff's mood rated a six on a scale of one to ten. (PageID.328.) Though she stated that she did not feel happy, she also stated that she was

doing better and no longer suicidal. She was caring for her mother and granddaughter. (PageID.328.) In January, Plaintiff's mood, thought process, and behavior were unremarkable. There were no suicidal thoughts. Plaintiff was active and engaged in group activity. (PageID.357.) Accordingly substantial evidence supports the ALJ's RFC determination.

Finally, Plaintiff appears to argue that the ALJ erred by finding that Plaintiff had moderate difficulties in concentration, persistence, and pace, but failing to account for those difficulties in the RFC and hypothetical to the VE. (PageID.529–530.) This is demonstrably not the case. Plaintiff is attempting to take a portion of the ALJ's finding with regard to the paragraph B criteria at step three out of context and substitute it for the ALJ's factual finding. But it is well established that the paragraph B criteria are not an RFC assessment. As the court explained in *Pinkard v. Commissioner of Social Security*, No. 1:13–cv–1339, 2014 WL 3389206 (N.D. Ohio July 9, 2014), when confronting a similar argument:

> Plaintiff argues that the ALJ erred in concluding that Plaintiff had moderate difficulties in concentration, persistence, and pace, while failing to include an appropriate limitation for these difficulties in the RFC findings . . . Plaintiff refers to the ALJ's paragraph B findings in his evaluation of Plaintiff's depression under 12.04 of the listing of impairments [ ]. 20 C.F.R. pt. 404, subpt. P, app. 1 Sections 12.04, 12.05, 12.06. However, the ALJ does not have to include paragraph B finding[s] in his RFC finding. Paragraph B findings under the listings are findings at step three of the sequential evaluation process, and are not RFC findings pertaining to steps four and five of the sequential evaluation process. 20 C.F.R. pt. 404, subpt. P, app. 1, Section 12.00. Hence, the ALJ was correct in finding that Plaintiff had moderate limitations in evaluating her mental impairment under the listings at step three of the sequential evaluation process, and in not including a "moderate limitation in concentration, persistence, and pace" in his residual functional capacity finding at steps four and five.

*Pinkard*, 2014 WL 3389206 at *10. Moreover, even a cursory reading of the RFC demonstrates that the ALJ *did* account for Plaintiff's limitations in concentration, persistence, and pace. The ALJ

10

noted that the RFC "reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." (PageID.36.) Moreover the RFC limited Plaintiff to simple, routine, and repetitive tasks that were free of fast-paced production requirements and involved only simple work related decisions and only routine workplace changes. It further included limitations for the time Plaintiff would be able to be on task, as well as how often Plaintiff could interact with the public. (PageID.36.) The Court discerns no error here.

For all the above reasons, Plaintiff's second claim of error is denied.

### 3. The ALJ's Use of Boilerplate Language Does Not Mandate Remand.

At the hearing, Plaintiff testified that she was impaired to an extent far greater than that recognized by the ALJ. The ALJ found Plaintiff's statements, however, to be "not entirely credible." (PageID.40.) Plaintiff argues the ALJ erred in doing so. (PageID.531–532.)

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, may be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984); *see also Grecol v. Halter*, 46 F. App'x 773, 775 (6th Cir. 2002). As the relevant Social Security regulations make clear, however, a claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled." 20 C.F.R. § 404.1529(a); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)); *Hash v. Comm'r of Soc. Sec.*, 309 F. App'x 981, 989 (6th Cir. 2009). Instead, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004).

Accordingly, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 F. App'x at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Id.* (citing *Walters*, 127 F.3d at 531); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) ("It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony" (internal quotation marks omitted)) . It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987).

Plaintiff claims the ALJ erred by using boilerplate language to find her statements to be less than fully credible. (PageID.530–532.) In support of this argument, Plaintiff cites *Bjornson v. Astrue*, 671 F.3d 640 (7th Cir. 2012), in which the Seventh Circuit criticized the use of "meaningless boilerplate" language. *Id.* at 645. As has been recognized, however, the shortcoming at issue in *Bjornson* was that the ALJ "used the boilerplate as [his] only statement about the claimant's credibility." *Johnson v. Comm'r of Soc. Sec.*, No. 1:12-CV-114, 2013 WL 1703894, at

*4 (W.D. Mich. Apr. 19, 2013). On the other hand, where a claimant contends that the ALJ made only a "boilerplate" credibility finding, this contention has no merit where the ALJ provided a thorough explanation elsewhere in the decision setting forth his reasons for doubting the claimant's account. *See Cox v. Comm'r of Soc. Sec.*, 615 F. App'x 254, 260 (6th Cir. 2015). Here, the ALJ gave specific reasons for rejecting Plaintiff's credibility. (PageID.40–42.) The ALJ noted, for example, that Plaintiff's prior employment was terminated not because of her impairments, but because of her drug use. (PageID.41, 251.) Plaintiff reported being able to treat her headaches with over the counter medication. (PageID.246.) The ALJ also noted that Plaintiff is able to use the computer and watch television. (PageID.255.) She is able to take care of her pets, and has no problem handling her personal care. (PageID.174.) She can prepare meals, and do some house work. (PageID.175.) She goes out roughly three times a week. (PageID.177.) Though she reported she no longer spends time with others, she stated she was able to have a good working relationship with others. (PageID.177, 179.) At bottom, the ALJ provided specific reasons, supported by substantial evidence, for discounting Plaintiff's credibility, and accordingly the use of boilerplate language to introduce the credibility discussion was not in error. The Court does not doubt that Plaintiff is limited by her conditions, but such limitations are adequately accounted for in the RFC. Plaintiff's claim of error will be denied.

## **CONCLUSION**

For the reasons articulated herein, the Commissioner's decision will be **AFFIRMED.** A separate judgment shall issue.

Dated: September 8, 2016                            /s/ Gordon J. Quist
                                                                    GORDON J. QUIST
                                                                    UNITED STATES DISTRICT JUDGE